IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Gretha G. Davis, | ) | C/A No. 3:13-2612-JMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| South Carolina Department of Health and | ) | |
| Environmental Control, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The plaintiff, Gretha G. Davis, filed this employment case alleging claims of race discrimination pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., violation of the Lilly Ledbetter Fair Pay Act ("FPA"), Pub. L. No. 111-2, 123 Stat. 5 (2009),[1] and violation of the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d), against her employer, the South Carolina Department of Health and Environmental Control ("DHEC"). This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the defendant's motion for summary judgment. (ECF No. 32.) Davis filed a response in opposition (ECF No. 50), and the defendant replied (ECF No. 51). Having reviewed the parties' submissions and the applicable law, the court finds that the defendant's motion for summary judgment should be granted.

---

[1] Davis acknowledges that the Lilly Ledbetter Fair Pay Act of 2009 does not create a separate cause of action, but governs when to file a charge in pay discrimination claims under Title VII, the Americans with Disabilities Act, and the Age Discrimination in Employment Act. (Pl.'s Resp. Opp'n Summ. J., ECF No. 50 at 1.)

Page 1 of 13



## BACKGROUND

The following facts are either undisputed or are viewed in the light most favorable to Davis, to the extent they find support in the record. (See generally Compl., ECF No. 1.) Davis is an African-American female who began her employment with DHEC in 1984 as a Microbiologist I with an annual salary of $14,000. When hired, Davis possessed a Bachelor's degree; however, she received a Master's degree in Public Health in 1996. In 2005, Dr. Arthur Wozniak, the Bureau Chief, promoted Davis to Microbiologist III to supervise the Milk and Dairy Laboratory at DHEC. Davis's promotion included a 9.5% raise, bringing her base pay to $47,996 per year. Davis remains in this position at the present time.

In August of 2011, Davis submitted a letter to Wozniak, in which Davis requested a salary increase and relayed her concerns of inequity in pay due to race. In November of 2011, Davis met with Gloria Tyler, DHEC's Employee Relations Manager, and Quinton Davis, DHEC's Equal Employment Opportunity Commission ("EEOC") Director, to review Davis's concerns of unequal pay. After an investigation into the matter, DHEC determined a pay inequity but was unable to substantiate Davis's claim that such inequity was based on her race. Effective March 17, 2012, DHEC raised Davis's annual salary to $60,168. Davis was unsatisfied with the salary increase and filed a Charge of Discrimination with the South Carolina Human Affairs Commission on April 3, 2012.

## DISCUSSION

**A.    Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law."



Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks and citation omitted). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

B.       Davis's Claims

    1.       Equal Pay Act

In essence, the Equal Pay Act prohibits discrimination between employees on the basis of sex by paying lower wages than those paid to employees of the opposite sex for substantially equal work. See 29 U.S.C. § 206(d)(1); Wheatley v. Wicomico Cty., 390 F.3d 328, 332 (4th Cir. 2004). Precedent reveals that "substantially" equal means that the jobs must be more than similar or even comparable; in fact, they must be virtually identical. Wheatley, 390 F.3d at 333-34.

To state a *prima facie* case under the Equal Pay Act, a plaintiff must show: (1) that her employer has paid different wages to employees of opposite sexes; (2) for equal work in jobs which require equal skill, effort, and responsibility; and (3) which are performed under similar working conditions. Brinkley v. Harbour Recreation Club, 180 F.3d 598, 613 (4th Cir. 1999), overruled on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003). If a plaintiff presents evidence to establish a *prima facie* case, an employer can utilize one of four statutory affirmative defenses. See 29 U.S.C. § 206(d)(1). At this stage, both the burdens of production and persuasion shift to the defendant. Brinkley, 180 F.3d at 613. Unlike Title VII, under the Equal Pay Act a plaintiff need not prove any discriminatory intent on the part of the employer. See Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336, 344 & n.17 (4th Cir. 1994).

The only element in dispute is the second element of the *prima facie* case. The analysis as to whether two jobs are substantially equal is a factual one. See Simpson v. Merchants & Planters Bank, 441 F.3d 572, 578 (8th Cir. 2006). In examining this question, the crucial inquiry is whether the jobs being compared have a " 'common core' of tasks, i.e., whether a significant portion of the two jobs is identical." Cullen v. Indiana Univ. Bd. of Trustees, 338 F.3d 693, 698 (7th Cir. 2003)



(quoting Fallon v. Illinois, 882 F.2d 1206, 1209 (7th Cir. 1989)); see also Brewster v. Barnes, 788 F.2d 985, 991 (4th Cir. 1986). If the jobs share a common core, the court should then inquire whether any additional tasks make the jobs "substantially different." Cullen, 338 F.3d at 698 (quoting Fallon, 882 F.2d at 1209); Brewster, 788 F.2d at 991. Jobs may be substantially different even though they share a common core of tasks if the higher paid job includes additional tasks which (1) require extra effort; (2) consume a significant amount of the time, and (3) are of an economic value commensurate with the pay differential. Wheatley, 390 F.3d at 333.

The applicable regulations and case law supply guidance as to whether two jobs require equal skill, effort, and responsibility. See 29 C.F.R. §§ 1620.14-.17; see also EEOC v. Universal Underwriters Ins. Co., 653 F.2d 1243, 1245 (8th Cir. 1981). "Skill" includes experience, training, education, and ability. 29 C.F.R. § 1620.15(a). The focus at the *prima facie* stage of the analysis is on the *positions* being compared, not the *individuals*. Cullen, 338 F.3d at 699; see also Simpson v. Merchants & Planters Bank, 441 F.3d 572, 578 (8th Cir. 2006) (citing Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1533 (11th Cir. 1992) (stating that at the *prima facie* stage of the analysis, "only the skills and qualifications actually needed to perform the jobs are considered")); 29 C.F.R. § 1620.15(a) ("Possession of a skill not needed to meet the requirements of the job cannot be considered in making a determination regarding equality of skill"). "Effort" means the physical or mental exertion required to perform the job. 29 C.F.R. § 1620.16(a). "Responsibility" addresses the degree of accountability required and the importance of the job obligation. 29 C.F.R. § 1620.17(a). Job titles and classifications are not determinative; the actual requirements and performance of the jobs are what matters. 29 C.F.R. § 1620.13(e).

Here, Davis offers as a comparator a male Microbiologist III, Christopher L. Evans, who is paid a higher salary than Davis. She argues that she has more years of experience at DHEC than Evans and that the written job descriptions for the Microbiologist III positions are generally similar. She further argues that her job is more important with more responsibility because state law requires the maintenance of the milk lab, she must ensure compliance with regulations of the federal Food and Drug Administration, and she has two other employees working under her supervision.

However, the record shows that, despite sharing the title of Microbiologist III and despite the jobs having somewhat similar minimum education requirements, Davis's and Evans's jobs are not substantially equal. First, the skills required to perform the job of supervising the Milk and Dairy Products Laboratory are not the same as those Evans has to have to direct the Emerging Diseases Laboratory Surveillance Program. The training for these positions is not the same, and Evans's job requires specialized abilities relating to entomology that Davis does not need to have to perform hers. Further, Evans's responsibilities are more expansive and require additional effort, as his position, in addition to maintaining a laboratory, requires public outreach efforts relating to publications and public presentations.

Specifically, Evans's position requires him to perform highly complex medical entomological duties both in the laboratory and in the field. He must design studies to identify and monitor selected emerging infectious diseases in the state and provide expert consultation on arthropods of medical and public importance. Further, his job requires him to prepare manuscripts for publication in scientific journals, as well as to deliver written and oral reports. (Def.'s Mem. Supp. Mot. Summ. J. Ex. J, ECF No. 32-11) (Evans Position Description). By contrast, Davis testified in her deposition that she is a supervisor, state laboratory evaluation officer, and a laboratory analyst. (Davis Dep. at



71, ECF No. 50-1 at 19.) Her written job description varies from Evans's in numerous significant respects. For example, the portion of Davis's position description addressing the knowledge, skills, and abilities required for the position reads rather generically, requiring a general "ability to perform a wide variety of tests procedures, and examinations," as well as to conduct on-site laboratory evaluations, and to provide consultative services in milk and dairy product testing. (Davis Position Description at ¶ 2, ECF No. 50-14 at 2.) The corresponding section for Evans's job demands specific "knowledge in the taxonomy and identification of arthropods," as well as requiring field experience in addition to laboratory experience. (Evans Position Description, ECF No. 32-11 at 2, ¶ 2.) Notably, the "Job Function" and "additional comments" sections of the two written job descriptions bear little resemblance to one another. (Compare Davis Position Description, ECF No. 50-14 at 2, ¶ 4 with Evans Position Description, ECF No. 32-11 at 2-3, ¶ 4; compare Davis Position Description, ECF No. 50-14 at 3, ¶ 2 with Evans Position Description, ECF No. 32-11 at 4, ¶ 2.)[2] Most tellingly, Davis admitted in her deposition that she and Evans "do different things." (Davis Dep. at 68, ECF No. 50-1 at 18; see also Davis Dep. at 40, ECF No. 50-1 at 11.)

Moreover, when the court examines relevant case law comparing job equality under the Equal Pay Act and applies those parameters to the record presented here, it becomes clear that Davis's and Evans's jobs are not substantially equal. The Seventh Circuit's decision in Cullen v.

---

[2] As discussed above, juxtaposition of the two written job descriptions shows numerous and significant differences, undermining Davis's argument in this regard. However, even if the written job descriptions of Davis and Evans were as similar as Davis contends, that would not be determinative of job equality, since the pertinent inquiry is how the two jobs are actually performed. See 29 C.F.R. § 1620.13(e); see also Glunt v. GES Exposition Servs., Inc., 123 F. Supp. 2d 847, 858 (D. Md. 2000) (stating that "actual performance, not official job descriptions, control the determination of whether a higher degree of responsibility and supervisory authority actually existed").



Indiana University Board of Trustees, 338 F.3d 693 (7th Cir. 2003), is instructive. There the court compared the job held by the female plaintiff, Dr. Cullen, an associate professor in charge of the university's respiratory therapy program, to that of her proffered male comparator, Dr. Quillen, director of the physical therapy program. Applying the applicable regulations, the Seventh Circuit found, despite Dr. Cullen's arguments that her position required equal skill and extra effort, that Cullen's arguments focused too heavily on job descriptions instead of considering "the duties actually performed by each employee." Cullen, 338 F.3d at 699-700.

Similarly, in Wheatley v. Wicomico County, 390 F.3d 328 (4th Cir. 2004), our own Fourth Circuit examined two jobs with the same titles and general responsibilities but in different departments. The court flatly rejected the theory that employees with the same titles and only the most generally similar responsibilities should be considered "equal" under the Equal Pay Act. The court relied on other Fourth Circuit cases where similar titles and general job responsibilities did not establish substantial equality under the EPA. In Soble v. University of Maryland, 778 F.2d 164 (4th Cir. 1985), the court compared the female plaintiff's job to other, male assistant professors and nevertheless found that the jobs were not substantially equal, as they served in different departments within the dental school and Soble did not have the same specialized dental training that most other male assistant professors in the dental school had.[3] And, in another case comparing jobs of college instructors, the Fourth Circuit found a male professor was not a proper comparator to the female plaintiff because he served in the biology department and was in charge of laboratory classes as well as lectures and he was the only full-time instructor for several science courses, whereas the plaintiff

---

[3] The court noted that the only male assistant professor who did not have the specialized dental degree carried a much heavier teaching load than the plaintiff.



was employed in the mathematics department, so the two jobs did not require the same skill and responsibility. Strag v. Bd. of Trustees, Craven Cmty. Coll., 55 F.3d 943, 950 (4th Cir. 1995).

These cases show that although Davis and Evans both held the position of Microbiologist III, because the skills, abilities, and required efforts are different, they cannot be considered substantially equal jobs. Accordingly, Evans is not a proper comparator to Davis and she cannot establish a *prima facie* case of a violation of the Equal Pay Act.

Moreover, even if Davis could establish a *prima facie* case, DHEC has carried its burden to show that the disparity in pay is based on a factor other than sex. Specifically, DHEC's well-supported motion for summary judgment demonstrates that it took into account Evans's Ph.D. and his prior salary history when considering Evans's salary. (See ECF No. 32-10 at 2-5.) Case law suggests that both of these considerations are permissible. See Cullen, 338 F.3d at 702-03 (stating that education and legitimate market forces may be considered reasons in determining whether disparate salaries exist for reasons other than sex). In Cullen, the court found that the fact that the higher-paid male held two additional educational degrees than the plaintiff, including a Ph.D., supported the defendant's position that the salary differential was based on a factor other than sex. Further, the Cullen Court acknowledged that "in establishing a starting salary it is also appropriate to consider the salary a newly hired employee was receiving elsewhere." Id. at 703. Thus, DHEC has carried its burden of production and persuasion and established one of the four statutory affirmative defenses. See 29 U.S.C. § 206(d)(1); Brinkley, 180 F.3d at 613.

**2.     Title VII**

**a.     Burden Shifting Framework**

A plaintiff may demonstrate discrimination through direct or circumstantial evidence. When direct evidence is lacking as it is here, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden-shifting framework. Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010) (Title VII). The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, "the McDonnell Douglas framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*." Id. (internal quotation marks and citations omitted).

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was "not its true reason[], but [was] a pretext for discrimination." Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext "merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005) (Title VII & 42 U.S.C. § 1981).



To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148. However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

  **b.**  **Application**

To establish a *prima facie* case of wage discrimination under Title VII, a plaintiff must show "that she is female, i.e., a member of a protected class, and that the job she occupied was similar to higher paying jobs occupied by males." Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336, 343 (4th Cir. 1994). Compared to the Equal Pay Act, "[u]nder the disparate treatment model of a Title VII action, 'there is a relaxed standard of similarity between male and female-occupied jobs, but a plaintiff has the [ultimate] burden of proving an intent to discriminate on the basis of sex.' " Id.



(quoting Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1529 (11th Cir. 1992)).  Davis cannot establish a *prima facie* case of wage discrimination because for all of the reasons discussed above, even under Title VII's more relaxed standard of similarity, Davis has failed to adduce facts showing that she was similarly situated to her proposed comparator—Evans.  See Woodward v. United Parcel Service, Inc., 306 F. Supp. 2d 567, 575 (D.S.C. 2004) (stating that to establish a *prima facie* case of pay discrimination, the plaintiff "must prove that the comparators upon whom [s]he relies are similarly situated 'in all relevant respects' ") (quoting Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997)); see also Soble v. University of Maryland, 778 F.2d 164, 167 (4th Cir. 1985) (affirming summary judgment on a Title VII pay claim for the same reasons as the claim under the Equal Pay Act, which was failure to demonstrate that she was receiving lower pay for work comparable to that of the male faulty members).  Thus, DHEC is also entitled to summary judgment on this claim.

## RECOMMENDATION

Based on the foregoing, the court recommends that the defendant's motion for summary judgment be granted (ECF No. 32).

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

July 30, 2015
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' "  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).