# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| Gretha G. Davis, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. |
| v. ) | 3:13-cv-02612-JMC |
| ) | |
| South Carolina Department of Health and ) | |
| Environmental Control, ) | |
| ) | **ORDER AND OPINION** |
| Defendant. ) | |
| ) | |

This matter is before the court on Defendant South Carolina Department of Health and Environmental Control's ("DHEC") Motion for Summary Judgment filed on January 22, 2015. (ECF No. 32.) Plaintiff Gretha G. Davis ("Davis") filed this action against DHEC, her employer, alleging claims of race discrimination pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, and sex discrimination pursuant to the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d). (ECF No. 1.)[1]

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) for the District of South Carolina, the matter was referred to United States Magistrate Judge

---

[1] The court notes that Davis's Complaint attempted to raise a separate cause of action for an alleged violation of the Lilly Ledbetter Fair Pay Act of 2009 (the "Act") (ECF No. 1); however, as noted in DHEC's Motion for Summary Judgment (ECF No. 32-1 at 2) and acknowledged in Davis's Response in Opposition (ECF No. 50 at 1 n.1), the Act does not create a cause of action. See Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5 (2009). "[T]he Act does not create substantive rights, but instead clarifies the point of commencement of the statute of limitations in instances of wage discrimination." Rodriguez–Torres v. Gov't Dev. Bank of Puerto Rico, 704 F. Supp. 2d 81, 96 n.6 (D.P.R. 2010).

1

Paige J. Gossett for pretrial handling. On July 30, 2015, the Magistrate Judge issued a Report and Recommendation (the "Report") recommending that the court grant DHEC's Motion for Summary Judgment. (ECF No. 52.) Davis filed an Objection to the Report (ECF No. 55) and DHEC filed a Reply (ECF No. 56). The court **ACCEPTS** the Report but **REJECTS** its finding regarding a part of the EPA analysis, and **GRANTS** DHEC's Motion for Summary Judgment (ECF No. 32).

## I.     JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

DHEC hired Davis, an African-American female, in 1984 for the position of Microbiologist I. (ECF No. 52 at 2.) At the time she was hired, Davis had a Bachelor's degree in Microbiology. (Id.) During her employment, Davis completed a Master's degree in Public Health in 1996. (Id.) In 2005, DHEC promoted Davis to a Microbiologist III position to supervise the Milk and Dairy Laboratory, for which she received a 9.5 % salary increase from $43,832 to $47,996. (ECF Nos. 50-2, 52 at 2.)

On or around July 26, 2011, Davis sent a letter to Dr. Arthur Wozniak ("Dr. Wozniak"), Chief of the Bureau of Laboratories, relaying her concerns of pay inequity due to her race. (ECF No. 32-3 at 2.) Davis expressed that her salary lagged behind the salary of employees with less education and/or experience and that she should be "granted equal compensation for equal credentials" and back pay. (ECF Nos. 32-3 at 2, 50-8 at 2.) Thereafter, around November 2011, Gloria Tyler ("Tyler"), DHEC's

2

Employee Relations Manager, and Quinton Chavis, DHEC's Equal Employment Opportunity Commission Director, instituted an investigation.  (ECF No. 50-4 at 6, 12.)

Tyler concluded that there was a pay inequity but that this inequity was not based on race.  (ECF Nos. 50-4 at 13, 50-9 at 2.)  Tyler indicated that although Davis's salary was less than Ms. Bandstra, a white female employee hired in 2009 for a similar position, it is not uncommon for a "long term employee to be at a lesser salary than a newer employee because of the increases that are received over the year and where they actually started."  (ECF No. 50-4 at 13, 15.)  In light of this salary inequity, DHEC approved Davis's salary for a Special Pay Raise of 12.5%, which resulted in a salary increase from $53,400 to $60,168, effective on March 17, 2012.  (ECF Nos. 32-5, 50-8, 50-16 (suggesting that since Davis's last promotion in 2005, her salary had increased to $53,400).)  This salary was in line with Ms. Bandstra, who was earning about $60,000.  (ECF Nos. 32-5, 50-8, 50-16.)

In a letter to Tyler dated March 19, 2012, Davis relayed her dissatisfaction with this resolution claiming that the adjusted salary continued to leave a significant salary discrepancy between her pay and that of another Microbiologist III.  (ECF No. 50-8.)  In a letter dated March 30, 2012, Tyler defended the proposal and maintained that the other Microbiologist III position, held by Dr. Christopher Evans ("Dr. Evans"), a white male, was completely different in terms of actual job skills and responsibilities.  (ECF No. 50-9 (emphasizing that the pay difference was the result of Dr. Evans's doctorate degree, entomology expertise, and higher salary ranges for medical entomologists in either the public or private sector).)

3

On April 3, 2012, Davis filed a Charge of Discrimination with the South Carolina Human Affairs Commission alleging that she was "denied equal wages beginning on or about August 8, 2011, and continuing through March 19, 2012" on the basis of her race.[2] (ECF No. 32-6.) Davis filed her Complaint on September 24, 2013, alleging race discrimination under Title VII and sex discrimination under the EPA. (ECF No. 1.) DHEC responded with a Motion for Summary Judgment. (ECF No. 32.) Davis filed a Response in Opposition (ECF No. 50) and DHEC filed a Reply (ECF No. 51). The Magistrate Judge issued a Report recommending that the court grant DHEC's Motion for Summary Judgment. Thereafter, Davis filed an Objection (ECF No. 55) to the Report and DHEC filed a Reply (ECF No. 56).

### III.    LEGAL STANDARD

*A. The Magistrate Judge's Report and Recommendation*

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. See Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court reviews *de novo* only those portions of a Magistrate Judge's recommendation to which specific objections are filed, and reviews those portions which are not objected to -- including those portions to which only "general and conclusory" objections have been made -- for clear error. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983);

---

[2] The court observes that Davis amended her Charge of Discrimination on December 21, 2012, to indicate that she had been involuntary transferred on or about November 2, 2012, and was not given an explanation. (ECF No. 50-12.) Davis was informed that she was being transferred from Health Services to Environmental Quality Control, but that no changes were anticipated in her job functions and responsibilities. (ECF Nos. 50-11, 50-12.)

Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).  The court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions.  See 28 U.S.C. § 636(b)(1).

 *B.  Summary Judgment*

  Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law.  See Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248-49 (1986).  In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  See Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).  "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion."  Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).

  "In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor."  Tavernier v. Healthcare Mgmt. Assocs., Inc., C/A No. 0:10-01753-MBS, 2012 WL 1106751, at *5 (D.S.C. Mar. 30, 2012) (citing Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002)).  "The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party."  Id. (citing Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 150 (2000)).

5

*C. Equal Pay Act*

To establish a *prima facie* case under the EPA, the plaintiff must demonstrate: (1) that the employer has paid different wages to employees of opposite sexes, (2) for equal work in jobs, which require equal skill, effort, and responsibility, and (3) which are performed under similar working conditions. See Gustin v. W. Va. Univ., 63 F. App'x 695, 698 (4th Cir. 2003) (quoting Brinkley v. Harbour Recreation Club, 180 F.3d 598, 613 (4th Cir. 1999)). "Additionally, the plaintiff must identify a particular male 'comparator' for purposes of the inquiry, and may not compare herself to a hypothetical or 'composite' male." Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 948 (4th Cir. 1995) (citing Houck v. Va. Polytechnic Inst., 10 F.3d 204, 206 (4th Cir. 1993)).

Once a plaintiff establishes a *prima facie* case of salary discrimination, the burden shifts to the employer to prove, by a preponderance of evidence, that the pay differential is justified by the existence of one of the four statutory exceptions set forth in § 206(d)(1): (1) a seniority system, (2) a merit system, (3) a system that measures earnings by quantity or quality of production, or (4) a differential based on any factor other than sex. See Strag, 55 F.3d at 948 (citing Houck, 10 F.3d at 207). "If this burden is successfully carried by the employer, the plaintiff's claim must fail unless the plaintiff can satisfactorily rebut the defendant's evidence." Id.

*D. Title VII*

Title VII prohibits discrimination in compensation based on an individual's race. See 42 U.S.C. § 2000e–2(a)(1). To establish a *prima facie* case of wage discrimination under Title VII, a plaintiff must show: (1) that she is a member of a protected class; (2) she was paid less than an employee outside the class; and (3) the higher paid employee

6

was performing a substantially similar job.  See Brown v. Thomas Supply Co., Inc., C/A No. 2:08–3124, 2010 WL 2640498, at *2 (D.S.C. July 1, 2010) (citing Brinkley–Obu v. Hughes Training, Inc., 36 F.3d 336, 343 (4th Cir. 1994) and Kress v. Mun. Employees Credit Union of Baltimore, Inc., 319 F. Supp. 2d 637, 644 (D. Md. 2004)).

A plaintiff suing under Title VII may "avert summary judgment" through direct evidence of discrimination or through the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[3]  "A plaintiff can survive a motion for summary judgment by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment decision." Diamond, 416 F.3d at 318 (citing Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004)).  "[T]he impermissible factor need not have been the sole factor." Id.  "As long as it motivated the adverse action, the plaintiff can establish an unlawful employment practice." Id. (citing 42 U.S.C.A. § 2000e–2(m)).

Alternatively, under the burden-shifting framework, once a plaintiff establishes a *prima facie* case, the defendant must articulate a legitimate, non-discriminatory reason for the pay disparity.  See Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010) (citation omitted); Wojciechowski v. Nat'l Oilwell Varco, L.P., 763 F. Supp. 2d 832, 854 (S.D. Tex. 2011) (quoting Meeks v. Computer Assocs. Intern., 15 F.3d 1013,

---

[3] See Foster v. Univ. of Maryland-Eastern Shore, 787 F.3d 243, 249 (4th Cir. 2015) (indicating that these two "avenues of proof" are often referred to as the "mixed-motive" framework and the "pretext" framework, respectively); Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005); see also Desert Palace, Inc., v. Costa,  539 U.S. 90, 92 (2003) (defining a mixed motive case as one where both legitimate and illegitimate reasons motivated the decision); see also Collins v. Landmark Military Newspapers, Inc., No. 2:06cv342, 2007 WL 2301549, at *17 (E.D. Va. Aug. 6, 2007) (articulating the standard under Title VII).

1019 (11th Cir. 1994)) (emphasizing that defendant's burden is "exceedingly light"). Once the defendant advances such a justification, the plaintiff must demonstrate by a preponderance of the evidence that the neutral reasons offered by the employer "were not its true reasons, but were a pretext for discrimination." Merritt, 601 F.3d at 294 (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981)). "The final pretext inquiry 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination,' which at all times remains with the plaintiff." Id. (quoting Burdine, 450 U.S. at 256).

## IV.    ANALYSIS

### A.    *The Report and Recommendation*

The Magistrate Judge found that DHEC was entitled to summary judgment on Davis's EPA and Title VII claims. (ECF No. 52.) With respect to Davis's EPA claim, the Magistrate Judge determined that the only element in dispute was the second element of the *prima facie* case (*i.e.*, equal work in jobs which require equal skill, effort, and responsibility). The Magistrate Judge found that Davis and the identified male comparator, Dr. Evans, held jobs that were not substantially equal. (Id. at 6 (concluding that the skills, training, effort, and responsibilities were not the same).) Specifically, the Magistrate Judge determined that Dr. Evans's position requires, *inter alia*, the performance of complex entomological duties, the design of studies to monitor infectious diseases, and preparation of manuscripts for scientific journals. (Id.) While acknowledging that job descriptions were not determinative, the Magistrate Judge advised that the job "descriptions bear little resemblance to one another." (Id. at 7 (adding that "[Davis] admitted in her deposition that she and Evans 'do different

8

things'").)  Relying on various cases, the Magistrate Judge concluded that despite similar job titles, because the skills were different and Dr. Evans's job responsibilities were more expansive and required added efforts, the two jobs were not substantially equal.  (Id. at 6, 8-9 (concluding that Dr. Evans was not a proper comparator).)  Moreover, even if Davis could establish a *prima facie* case, DHEC had carried its burden of showing that the disparity in pay was based on a factor other than sex.  (Id. at 9 (finding that Dr. Evans's Ph.D. and prior salary history were permissible factors other than sex to explain a disparity in pay).)

As for Davis's Title VII claim, the Magistrate Judge determined that direct evidence of discrimination was lacking and proceeded to the burden shifting analysis.  (Id. at 10.) Applying this standard, the Magistrate Judge concluded that despite the relaxed standard of similarity between male and female occupied jobs under Title VII, Davis had failed to "adduce facts showing that she was similarly situated to her proposed comparator – Evans."  (Id. at 12.)

*B.     Davis's Objections*

Davis has filed two objections to the Report that maintain that the Magistrate Judge erred (1) in considering evidence not previously produced in discovery and (2) in failing to accept Davis's identified comparator for her EPA claim and her Title VII claim. (ECF No. 55.)  Davis argues that in her Response in Opposition to DHEC's Motion for Summary Judgment, she specifically objected to DHEC's use of various relevant and requested exhibits.    (Id. at 4.)    Davis maintains that discovery was open for approximately two years, yet DHEC failed to produce these exhibits during discovery, and waited until its summary judgment motion.  (Id.)  Davis indicates that despite Rule

9

37(c) of the Federal Rules of Civil Procedure providing an "automatic sanction" of exclusion, the Magistrate Judge reopened discovery for the purposes of deposing Tyler. (Id. (arguing that Tyler's testimony was of little benefit).)  Davis maintains that the Magistrate Judge should have omitted DHEC's exhibits to its summary judgment motion. (Id. at 5 n.3 (adding that DHEC primarily relies on these exhibits to distinguish Dr. Evans as a comparator).)

With respect to the Magistrate Judge's alleged failure to accept Dr. Evans as a comparator for her EPA claim, Davis argues that the Report focuses only on the fact that the training is different and that the parties use different abilities.  (Id. at 5 (arguing that Dr. Evans's Ph.D. is of no consequence).)  Davis argues that although DHEC makes no reference to training differences, the Magistrate Judge concluded that there was a difference in training; that despite her resume indicating she has more experience, that fact alone should not disqualify Dr. Evans from being her comparator; and that with respect to effort, the job positions suggest that the levels of effort are similar.  (Id.) Finally, in considering responsibility, Davis argues that she and Dr. Evans maintain a degree of accountability that is comparable.  (Id. at 6-7 (arguing that Dr. Evans maintains a lab, whereas Davis maintains a lab mandatory under state law and provides direction to subordinates).)

As for the Title VII claim, Davis argues that DHEC acknowledged an inequity in salary between her and Dr. Evans in 2012 and that DHEC's explanation that it was not discriminatorily motivated was superficial.  (Id. at 7 (adding that her lab was relocated thereafter).)  Finally, Davis maintains that DHEC increased her salary because it perceived her job as comparable to Dr. Evans's job.  (Id. at 8.)

10

### C.     *DHEC's Reply to Objection*

DHEC maintains that Davis's objections to the Magistrate Judge's considerations of certain evidence are curious because those issues have already been addressed by the court and are baseless because the documents are admissible under Rules 803(6), 803(8) and 902 of the Federal Rules of Evidence. (ECF No. 56 at 1-2 (referring to evidentiary rules addressing "Records of a Regularly Conducted Activity," "Public Records," and "Evidence That Is Self-Authenticating" respectively).) DHEC argues that Davis's argument that she was ambushed by the information in these documents is simply not accurate. (Id. at 2.) Moreover, DHEC maintains that the Magistrate Judge engaged in a thorough review of the record and the applicable law in finding that Dr. Evans was not a proper comparator. (Id. at 4 (maintaining that the Magistrate Judge properly found that the EPA claim should be dismissed).) With respect to the Title VII claim, DHEC contests Davis's argument that it was unable to point to any other basis other than unlawful discrimination to explain the pay inequity. (Id.) DHEC indicates that it presented other reasons to explain the difference in pay. (Id. at 4-5 (responding that the Magistrate Judge properly found that the Title VII claim should be dismissed).)

### D.     *The Court's Review*

Davis essentially raises two objections to the Report's findings: the Magistrate Judge improperly considered evidence not previously produced by DHEC during discovery and erred in failing to accept Davis's identified comparator for the EPA and Title VII claims.

11

1. Discovery

Having reviewed the Magistrate Judge's decision to grant in part Davis's Motion for Failure to Disclose in Discovery and to reopen discovery for the limited purpose of allowing Davis to depose Tyler, the court finds that the Magistrate Judge properly exercised its broad discretion under Rule 37(c) to determine whether a nondisclosure of evidence is substantially justified or harmless.[4] (See ECF No. 46.)

2. EPA and Title VII Claims

   a. EPA Claim

Davis argues that she performed equal work in a job, which requires equal skill, effort, and responsibility. To determine whether two jobs are equal, courts look to "whether the jobs have a 'common core of tasks, i.e., whether a significant portion of the two jobs is identical.'" Merillat v. Metal Spinners, Inc., 470 F.3d 685, 695 (7th Cir. 2006) (quoting Cullen v. Indiana Univ. Bd. of Trs., 338 F.3d 693, 698 (7th Cir. 2003)). Once a plaintiff establishes a common core of tasks, the court inquires "whether any additional tasks make the jobs 'substantially different'" and whether "each of the elements listed in the EPA (skill, effort and responsibilities) [are] met . . . ." Id. (quoting Cullen, 338 F.3d at 698). Courts look to the actual job duties performed, not the job description or title. Id. (citing Dey v. Colt Constr. & Dev. Co., 28 F.3d 1446, 1461 (7th

---

[4] See S. States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003) ("[I]n exercising its broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.").

Cir. 1994)). Importantly, the court observes that in enacting the EPA, "Congress chose the word 'equal' over the word 'comparable' in order 'to show that the jobs involved should be virtually identical, that is . . . very much alike or closely related to each other.'" Wheatley v. Wicomico Cnty., 390 F.3d 328, 333 (4th Cir. 2004) (quoting Brennan v. City Stores, Inc., 479 F.2d 235, 238 (5th Cir. 1973)).

Davis maintains that her position as Microbiologist III requires equal skill as Dr. Evans's position as Microbiologist III. "Skill includes consideration of such factors as experience, training, education, and ability." Cullen, 338 F.3d at 699 (quoting 29 C.F.R. § 1620.15(a)) (emphasizing that the "comparison at this juncture is between positions, not individuals")). "Possession of a skill not needed to meet the requirements of the job cannot be considered in making a determination regarding equality of skill." Id. (quoting § 1620.15(a)). "[Skill] must be measured in terms of the performance requirements of the job." § 1620.15(a).[5] Though job descriptions are not dispositive, the Magistrate Judge properly concluded that the two written job descriptions showed numerous and significant differences. (ECF No. 52 at 7 (acknowledging that job descriptions are not dispositive).) Despite identical job titles, the Magistrate Judge correctly determined that the actual skill set required for each position is different. (See ECF No. 52 at 6-9 (discussing the skills required to perform the job).) In a letter dated March 30, 2012, Tyler articulated DHEC's position regarding the difference in actual job skills and

---

[5] Moreover, § 1620.15(a) also states that:

> If an employee must have essentially the same skill in order to perform either of two jobs, the jobs will qualify under the EPA as jobs the performance of which requires equal skill, even though the employee in one of the jobs may not exercise the required skill as frequently or during as much of his or her working time as the employee in the other job.

13

responsibilities involved in the respective positions. (ECF No. 50-9.) Tyler described and distinguished Dr. Evans's position and duties as follows:

> [Dr. Evans's position] is akin to a specialty in microbiology, and is important to the agency's public health mission due to the number and complexity of major chronic and other illnesses being borne by insects and potentially affecting a large portion of the population. Dr. Evans works as a co-investigator in the Emerging Diseases Laboratory Surveillance Program. In addition, this position requires extensive intra-agency and outreach duties and responsibilities, including publication in scientific journals and professional publications and representations to agency partners, clients and the public. There is no supervisory role.

(ECF No. 50-9 (distinguishing Dr. Evans's and Davis's positions).) Moreover, Davis indicated that she and Dr. Evans had different educational backgrounds and duties:

> **Q: (DHEC's Counsel)**. Well, let me rephrase the question. Is it fair to say given – I understand you have seen his position description. Given what you know about what people like Ms. Tyler have told you about his position, is it fair to say that what he does is just different than what you do?
> **A: (Davis)**. Yes, sir, it's different.
> **Q:** Is it fair to say that you do not have the same educational background?
> **A:** It's fair to say that. But when I was given the additional pay increase and was told that it was not racial discrimination, I asked what factor was found to be associated with the pay discrepancy and nobody was able to tell me anything.
> **Q:** Well, if I'm telling you right now that you obviously have different educational backgrounds, that would be true, wouldn't it?
> **A:** That would be true.
> **Q:** And it's obvious that you just do different things, correct?
> **A:** That's true.

(ECF No. 50-1 at 18 (indicating Davis's response to job duty similarities and educational background questions).)[6] Accordingly, the court finds that the skill set required to perform these jobs are different.

With respect to responsibility, Davis argues that she and Dr. Evans maintain a comparable degree of accountability. (ECF No. 55 at 6-7 (arguing that while Dr. Evans prepares publications and presentations, Davis is responsible for maintaining a laboratory that is mandatory under the law).) "Responsibility is concerned with the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation." 29 C.F.R. § 1620.17(a). The record indicates that Davis's and Dr. Evans's responsibilities are different. As Davis mentioned during her deposition, she and Dr. Evans did not have similar duties:

> **Q: (DHEC's Counsel)**. And Mr. Evans, Dr. Evans, he reported directly to Dr. Meredith?
> **A: (Plaintiff)**. Yes, sir.
> **Q:** And was over the Medical Entomology section?
> **A:** Yes, sir.
> **Q:** So his duties were different than yours; is that correct?
> **A:** Yes, sir.

(ECF No. 50-1 at 11 (indicating Davis's response to job duty similarities).)[7] Furthermore, Tyler indicated that while Davis had supervisory requirements, she had

---

[6] The court observes that the Report makes a conclusion regarding Dr. Evans's training without the proper foundation. (See ECF No. 52 at 6 (stating that the training for these positions is not the same); but see ECF No. 55 at 6 (arguing that DHEC makes no reference to training differences in its memorandum).)

[7] See Pearce v. Wichita County, City of Wichita Falls, Tex., Hosp. Bd., 590 F.2d 128, 133 (5th Cir. 1990) ("Although job titles are entitled to some weight in the assessment of comparative responsibility, '(t)he controlling factor under the Equal Pay Act is job content [—] the actual duties that the respective employees are called upon to perform.'" (quoting Hodgson v. Brookhaven Gen. Hosp., 436 F.2d 719, 724 (5th Cir. 1979))); see also Myers v. Crestone Intern., LLC, 121 F. App'x 25, 29 (5th Cir. 2005) (discussing responsibility in terms of duties).

more general duties in her field. (Id. (maintaining that the actual job skills and responsibilities are completely different).) Accordingly, the court finds that Davis and Dr. Evans have different responsibilities.

Finally, Davis maintains that there is "nothing in the record that would imply [Dr.] Evans works any harder or is subjected to more mental exertion than [her]." (ECF No. 55 at 6.) "Effort is concerned with the measurement of the physical or mental exertion needed for the performance of a job." 29 C.F.R. § 1620.16(a). "Job factors which cause mental fatigue and stress, as well as those which alleviate fatigue are to be considered in determining the effort required by the job." Id. "[J]obs may require equal effort in their performance even though the effort may be exerted in different ways . . . ." Id. Davis argues that she and Dr. Evans are tasked with performing laboratory activities and tests, and that the "stress and fatigue that accompanies producing productive results in their respective fields are equal." (ECF No. 50 at 10.) Although the Magistrate Judge found that Dr. Evans's job requires more effort as a result of his public outreach efforts related to publications and presentations, the court disagrees and finds that there is insufficient evidence to conclusively determine that Dr. Evans's job necessarily requires more effort (*i.e.*, physical or mental exertion).

In conclusion, despite identical job titles and arguably similar levels of effort exerted in their respective positions, the record indicates that the actual job skill and responsibilities performed by Davis and Dr. Evans do not meet the exacting standard set forth under the EPA of work that is "virtually identical" or "very much alike or closely related to each other." Wheatley, 390 F.3d at 333 (articulating the EPA standard); see

also Rollins v. Alabama Cmty. Coll. Sys. , 814 F. Supp. 2d 1250, 1267 (M.D. Ala. 2011) ("The Equal Pay Act requires a plaintiff to meet a 'fairly strict' burden of proving she did 'substantially similar' work for less pay." (citing Beavers v. Am. Cast Iron Pipe Co., 975 F.2d 792, 795 (11th Cir. 1992))).  Accordingly, the court finds that Dr. Evans is not a proper comparator to Davis and she cannot establish a *prima facie* case of an EPA violation.

Moreover, the Magistrate Judge properly concluded that assuming Davis could establish a *prima facie* case for salary discrimination under the EPA, DHEC had carried its burden of demonstrating that the pay disparity was based on a factor other than sex. Real difference in educational background is a recognized factor other than sex under the EPA.  See Merillat, 470 F.3d at 697; see also Brinkley, 180 F.3d at 620 ("Experience and salary history differentials may, in the proper case, constitute bases upon which to pay a man more than a woman for the same work.").  DHEC indicated that Dr. Evans's salary was based on his Ph.D. and prior salary history.  (ECF No. 52 at 9 (citing ECF No. 32-10 at 2-5).)  Because Davis failed to rebut DHEC's reason, DHEC's Motion for Summary Judgment on the EPA claim is GRANTED.

      b. Title VII Claim

Davis maintains that the Magistrate Judge erred in failing to accept Dr. Evans as a comparator for her Title VII claim.  (ECF No. 55 at 7.)  Davis argues that she has demonstrated sufficient direct and circumstantial evidence for a reasonable jury to conclude that race was a motivating factor in explaining the pay disparity.  (ECF No. 50 at 19.)  Specifically, Davis maintains that she has shown:

> (1) that she is/has consistently been paid from $5,000-$15,000 less per year than her nearest comparator who is

> nearly identical to her in all employment-related aspects, save race; (2) that [DHEC] has specifically acknowledged inequity between [Davis] and her counterparts; (3) that [DHEC] relies on mere bald conclusory statements that while an inequity exists it was purportedly not racially motivated; and (4) that she continues to be subjected to evasion of the matter by [DHEC], including the involuntary transfer of her laboratory.

(ECF No. 50 at 19-20 (stating Davis's arguments).) "Regarding direct proof of discriminatory intent, '[w]hat is required is evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" Collins v. Landmark Military Newspapers, Inc., No. 2:06cv342, 2007 WL 2301549, at * 17 (E.D. Va. Aug. 6, 2007) (quoting Brinkley, 180 F.3d at 607). At Davis's deposition, Davis stated that the salary differential between she and Dr. Evans may not be related to race:

> **Q: (DHEC's Counsel).** So if Mr. Evans' hiring at a salary rate of above $65,000 was approved by Mr. Chappell, [an African-American] do you conclude that whatever the cause was for that decision, it was not race?
> **A: (Davis).** It may not have been race, but I believe it was based on a lack of facts or information needed to make a decision.

(ECF No. 50-1 at 17.) Although Davis's response does not exclude race from being a motivating factor, Davis has not presented evidence that demonstrates a discriminatory intent. The Magistrate Judge properly determined that direct evidence of discriminatory intent was lacking. (ECF No. 52 at 10.) Accordingly, Davis may not avert summary judgment under the direct method of proof.

Similarly, under the burden shifting framework, the Magistrate Judge correctly concluded that despite a relaxed standard of similarity, Davis had not established a *prima*

*facie* case of wage discrimination under Title VII.[8] (See ECF No. 52 at 12.) Assuming Davis could establish a *prima facie* case, DHEC has proffered evidence of legitimate non-discriminatory reasons that satisfy the light burden of production under Title VII: higher educational credentials, more complex tasks, and different salary history. (ECF No. 32-1 at 12.) Davis has not produced evidence that rebuts these proffered reasons, and that show that the real reason was discrimination. In fact, Davis indicated that she believes it may not have been about race, but rather a lack of information. Accordingly, the court grants summary judgment on the Title VII wage disparity claim.

## V.     CONCLUSION

The court **ACCEPTS** the Report (ECF No. 52) but **REJECTS** its finding regarding the effort prong of the EPA analysis, and **GRANTS** DHEC's Motion for Summary Judgment based on the reasons discussed herein. (ECF No. 32).

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

September 24, 2015
Columbia, South Carolina

---

[8] See Lewis v. Smith, 255 F. Supp. 2d 1054, 1061 (D. Ariz. 2003) (stating that a finding that a plaintiff's job, while not substantially equal as a matter of law under the EPA, may still be considered substantially similar under Title VII).